# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MARCUS STROUD,            )     3:22-cv-00799 (KAD)
     *Plaintiff*,         )
                   )
v.                   )
                   )
FEDERAL BUREAU OF PRISONS,   )     JULY 7, 2023
     *Defendant*.       )

## MEMORANDUM OF DECISION
## RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 19)

The Plaintiff, Marcus Stroud, a prisoner in the custody of the Federal Bureau of Prisons ("BOP") at the Federal Correctional Institution Danbury ("FCI Danbury"), commenced this action on June 21, 2022. He asserts two counts: (1) that Defendant BOP improperly responded to his requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for certain administrative remedy records; and (2) that Defendant has a policy or practice of improperly withholding record or delaying prisoners' timely access to documents. Second Am. Compl., ECF No. 18.

Defendant moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) and, alternatively, for summary judgment under Federal Rule of Civil Procedure 56. *See* Def.'s Mot., ECF No. 19. The motion is now fully briefed.

The Court considers this motion under the standards relevant to a motion for summary judgment, and after thorough review and consideration of Plaintiff's complaint, the parties' memoranda of law, statements of facts, and all evidentiary materials, the motion for summary judgment is GRANTED.[1]

---

[1] *See Sussman v. U.S. Dep't of Just.*, No. 03 CIV. 3618 (DRH) (ETB), 2006 WL 2850608, at *1 (E.D.N.Y. Sept. 30, 2006) (noting that in FOIA and Privacy Act cases, "summary judgment is recognized as the primary mechanism by which a district court will resolve the issues presented").

**FACTS[2]**

The facts are taken primarily from BOP's Local Rule 56(a)1 Statement and supporting exhibits. *See* Def.'s Local Rule 56(a)1 Statement ("Def.'s Rule 56(a)"), ECF No. 19-2.[3]

Plaintiff is a federal prisoner housed at the Federal Correctional Institution ("FCI") Danbury in Danbury, Connecticut. Def.'s Rule 56(a) ¶ 1. In this action, Plaintiff complains about BOP's responses to two FOIA requests.

**Plaintiff's FOIA Request Number 2022-05186**

In his first FOIA request relevant to this action, Plaintiff requested information about the BOP Administrative Remedy program and inmate Administrative Remedy filings.[4] Plaintiff mailed BOP his FOIA request dated April 19, 2022 ("Request 1") seeking:

> (1) Indexes of Administrative Remedys for the Northeast Regional Office from January 1st, 2021 to October 31st, 2021;' (2) 'Indexes of Administrative Remedys from FCI Loretto from January 1st, 2021 to October 31st, 2021;' (3) 'The status code definitions of the Administrative Remedy program;' (4) 'The Subject code definitions of the Administrative Remedy program;' and (5) 'the responses to administrative remedys: #1112701-F1 , #1114693-F1 , #1115672-F2, #1114758-F1, #1114680-F1, #1111009-F3.

Def.'s Rule 56(a) ¶ 3; *see* FOIA Req., ECF No. 19-4.

---

[2] Local Rule 56(a)(1) provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." BOP provided Plaintiff with the Notice to *Pro Se* Litigant required under Local Rule of Civil Procedure 12. *See* Notice, ECF No. 22. Plaintiff has filed a Local Rule 56(a)(2) Statement that essentially admits to all of BOP's Local Rule 56(a)1 statements of fact. *See* Pl.'s Opp'n at 31–32, ECF No. 24. Thus, the Court cites only to the relevant paragraph in the Local Rule 56(a)1 Statement as the facts are not disputed.
[3] The page numbers cited to in this ruling regarding any documents that have been electronically filed refer to the page numbers imprinted by the electronic case filing system on the header of the documents and not to the page numbers of the original documents, if any.
[4] BOP's Administrative Remedy Program ("ARP") is designed to "allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement. An inmate may not submit a Request or Appeal on behalf of another inmate." Def.'s Rule 56(a) ¶ 2; 28 C.F.R. § 542.10.

BOP received the FOIA request on April 26, 2022, and docketed Plaintiff's request as FOIA Request Number: 2022-05186. *Id.* ¶ 4. BOP employees searched the BOP SENTRY database and the Administrative Remedy Clerk's paper files, which contain documents and information related to administrative remedies. *Id.* ¶ 5. This search was reasonably calculated to find the records sought for the request and to contain all responsive materials as no additional identifiable locations were likely to have responsive information. *Id.*

BOP located 383 pages of responsive records for Plaintiff's FOIA Request 1.[5] *Id.* ¶ 6. BOP determined that 359 pages were appropriate for release in full and 24 pages were appropriate for release in part. *Id.* It searched all areas reasonably likely to render responsive documents. *Id.*

With a letter dated August 30, 2022, BOP sent Plaintiff 383 responsive pages of records. *Id.* ¶ 7. The BOP letter explained the partial redactions on 24 of the 383 pages redacted pursuant to 5 U.S.C. § 552(b)(6)[6] and § 552(b)(7)(C), (E) and (F).[7] It advised him that if he was not satisfied with the response to his request, he had the right to file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G St., NW, 6th Floor, Washington, DC 20530, and that the appeal must be postmarked within 90 days of August 30, 2022. *Id.*

---

[5] BOP determined that two Administrative Remedies did not receive responses. *Id.* ¶ 9.

[6] The FOIA exemption under section 552(b)(6) protects against disclosure that implicates personal privacy interests. "The government may withhold records in 'personnel and medical files and similar files' only when their release 'would constitute a clearly unwarranted invasion of personal privacy.'" *Vietnam Veterans of Am. v. Dep't of Def.*, 453 F. Supp. 3d 508, 515 (D. Conn. 2020) (quoting 5 U.S.C. § 552(b)(6)).

[7] The FOIA exemption under section 552(b)(7) "permits agencies to withhold 'records or information compiled for law enforcement purposes,' if the records implicate one or more enumerated risks." *Peeler v. U.S. Dep't of Just., Drug Enf't Agency*, No. 11CV1261 (JBA), 2013 WL 4441528, at *5 (D. Conn. Aug. 15, 2013) (quoting 5 U.S.C. § 552(b)(7)). Enumerated risks include, *inter alia*, that such law enforcement records "(C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7).

BOP subsequently rereviewed Request 1 and lifted several redactions to the document production responsive to his FOIA request 2022-05186. *Id.* ¶ 10. In her declaration, Government Information Specialist White avers that she reviewed the production for Plaintiff's Request 1 and determined that several redactions should be lifted on October 26, 2022. White Decl. ¶¶ 12–13, ECF No. 19-3. She declares that the remaining redactions are consistent with exemptions under (1) exemptions sections 552(b)(6) and (b)(7)(C) for unwarranted invasion of personal privacy for identifying information such as names, registration numbers, and narrative portions of administrative remedy responses that include other inmates' harassment allegations, medical information, release date inquiries, and disciplinary record expungement requests; and (2) exemptions sections 552(b)(7)(F) and (E) for law enforcement records that could reasonably be expected to endanger the safety or life of any individual or risk circumvention of law for information concerning inmate safety requests. *Id.* ¶ 13. In applying the FOIA exemptions, BOP considered the foreseeable harm standard required by 5 U.S.C. § 552(a)(8)(a); BOP maintains that disclosure of the redacted material would reasonably harm an interest protected by an exemption.[8] Def.'s Rule 56(a) ¶ 11. Plaintiff claims BOP incorrectly considered the foreseeable harm. Pl.'s Rule 56(a) ¶ 11, ECF No. 24.

---

[8] Due to a concern about agency overuse of FOIA exemptions, Congress enacted the FOIA Improvement Act of 2016 (the "FIA") amending FOIA to provide that an agency could withhold information only if it showed that the information both fell within an exemption of FOIA and at least one of the two following requirements was met:

> (I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); *or*

> (II) disclosure is prohibited by law.

*Seife v. U.S. Food & Drug Admin.*, 43 F.4th 231, 235 (2d Cir. 2022) (emphasis added) (quoting 5 U.S.C. § 552(a)(8)(A)(i)).

**Plaintiff's FOIA Request Number 2022-05279**

In a second FOIA request dated May 16, 2022 ("Request 2"), Plaintiff sought the following

information about FCI Danbury:

> [T]he rated capacity form for FCI Danbury pursuant to [BOP] Program
> Statement 1060.11 and any rated capacity notifications from FCI Danbury from
> January 1st, 2022 until May 15th 2022. I also ask for the daily population for
> FCI Danbury from January 1st 2022 until May 15th 2022. Lastly, I request the
> average percentage of overcrowded capacity (eg. What is the average percentage
> of inmates to rated capacity)

Def.'s Rule 56(a) ¶ 12.

On April 26, 2022, BOP received this FOIA request docketed as FOIA Request Number

2022-05279. *Id.* ¶ 13. On August 15, 2022, BOP sent Plaintiff a letter stating, *inter alia:*

> We determined unusual circumstances exist as the documents responsive to your
> request must be searched for and collected from a field office, and/or the
> documents responsive to your request are expected to be voluminous and will
> require significant time to review, and/or your request requires consultation with
> at least one other agency with a substantial interest in your request. Because of
> these unusual circumstances, we extended the time limit to respond to your
> request for the ten additional days provided by the statute. Processing complex
> requests may take up to nine months. In accordance with 28 C.F.R. § 16.5(b)
> and (c), you may narrow or modify your request in an effort to reduce the
> processing time.

*Id.* ¶ 14.

**Plaintiff's Federal Action**

On June 21, 2022, prior to receiving the responsive letters to FOIA Requests 1 and 2,

Plaintiff filed this FOIA action alleging that he submitted his Request 1 but had received no

response. *Id.* ¶ 15; Compl., ECF No. 1.

On September 16, 2022, Plaintiff amended his complaint asserting two counts against

Defendant. *See* Am. Compl., ECF No. 14. In his first count, Plaintiff alleged that BOP's failure to

timely respond to "Request 1" violates FOIA. *See id.* at 7. In his second count, Plaintiff alleged that BOP's responses to his FOIA Requests 1 and 2 and a third request by a nonparty inmate showed "systematic failure to properly process the FOIA requests in a timely manner and create delays to disguise . . . FOIA violations." *See id.* at 6–9.

On September 26, 2022, Plaintiff moved to "file a supplemental civil complaint," as he had received a production of records with heavy redactions and two records omitted. *See* Mot. to Suppl. at 7, 11, ECF No. 16.

On September 30, 2022 the Court granted the motion to amend/correct. Order, ECF No. 17. In this second amended Complaint, Plaintiff requests, *inter alia*, that the Court:

> A. Order the Defendant to disclose the requested records from Request 1 which the Federal Bureau of Prisons had unreasonably redacted and withheld;

> B. This Honorable Court declare that the Federal Bureau of Prisons has policies and/or practice which result in undue delays for the release of records pursuant to the Freedom of Information Act;

> C. Order the Defendant to fix their systematic failures so as to allow the public timely access to their agency records[.]

Second Am. Compl. at 6.

**STANDARD OF REVIEW**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248.

"The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . ." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation," but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotations omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented party's papers "liberally" and "interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotations omitted), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**DISCUSSION**

"FOIA was enacted to promote honest and open government, and to ensure public access to information created by the government in order to hold the governors accountable to the governed." *Long v. Off. of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) (internal citation and quotation marks omitted). Thus, "FOIA provides that federal agencies in possession of records and related materials must make them available to the general public upon request." *Lawyers Comm.*

*for Hum. Rts. v. Immigr. & Naturalization Serv.*, 721 F. Supp. 552, 560 (S.D.N.Y. 1989) (citing 5 U.S.C. § 552(b)(2)–(9)). When an agency receives a request for records, it must "(1) conduct an adequate search using reasonable efforts, (2) provide the information requested, unless it falls within a FOIA exemption, and (3) provide any information that can be reasonably segregated from the exempt information." *N.Y. Times Co. v. U.S. Dep't of Just.*, 390 F. Supp. 3d 499, 511 (S.D.N.Y. 2019) (quotations omitted). The statute "strongly favors a policy of disclosure and requires the government to disclose its records unless its documents fall within one of the specific, enumerated exemptions set forth in the Act." *Nat'l Council of La Raza v. U.S. Dep't of Just.*, 411 F.3d 350, 355 (2d Cir. 2005) (internal citation omitted).

Agencies "ha[ve] a duty to construe a FOIA request liberally," *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), and "FOIA exemptions are construed narrowly," *Long*, 692 F.3d at 190. "[A] court is to resolve all doubts in favor of disclosure." *Id.*

**Count One**

BOP first argues that the Court should dismiss Count One because Plaintiff did not exhaust his administrative remedies after he received the production for his Request 1. FOIA permits a person who has made a FOIA request to file an appeal of adverse determinations. 5 U.S.C. § 552(a)(6)(A); 11 C.F.R. § 4.8(a). This statutory scheme requires a plaintiff to exhaust his administrative remedies prior to judicial review. *Thomas v. Off. of the U.S. Att'y*, 171 F.R.D. 53, 55 (E.D.N.Y. 1997). The purpose of this requirement is to allow the agency the opportunity to exercise its expertise and develop a record for review. *In re Steele*, 799 F.2d 461, 466 (9th Cir. 1986). "The doctrine of administrative exhaustion applies to FOIA and limits the availability of judicial review." *Elec. Priv. Info. Ctr. v. Internal Revenue Serv.*, 910 F.3d 1232, 1238 (D.C. Cir. 2018). "Although exhaustion of a FOIA request is not jurisdictional because the FOIA does not

unequivocally make it so . . . still as a jurisprudential doctrine, failure to exhaust precludes judicial review if the purposes of exhaustion and the particular administrative scheme support such a bar." *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (internal quotation marks and citations omitted); *see Schwarz v. Dep't of Just.*, No. 10 Civ. 0562 (BMC) (LB), 2010 WL 2836322, at *3 (E.D.N.Y. July 14, 2010) ("This Court agrees that the failure to exhaust a[] FOIA claim does not affect the Court's subject matter jurisdiction. In recent cases in other areas of law, the Supreme Court has made it clear that statutory prerequisites to suit are not jurisdictional unless Congress phrases them in jurisdictional terms."). Allowing individuals to proceed in court with a FOIA claim without first exhausting their remedies would undercut "the purposes of exhaustion, namely, preventing premature interference with agency processes, affording the parties and the courts the benefit of the agency's experience and expertise, [and] compiling a record which is adequate for judicial review." *Hidalgo v. F.B.I.*, 344 F.3d 1256, 1259 (D.C. Cir. 2003) (cleaned up). Also, "FOIA's administrative scheme 'favors treating failure to exhaust as a bar to judicial review.'" *Wilbur*, 355 F.3d at 677 (quoting *Hidalgo*, 344 F.3d at 1259).

FOIA, however, provides for constructive exhaustion if the agency fails to comply with its time limits for responding to FOIA requests. *See* 5 U.S.C. § 552(a)(6)(C) (providing that a person making a FOIA request "shall be deemed to have exhausted his administrative remedies" if the agency does not comply with statutory time limits). Section 552(a)(6)(A) provides that an agency "shall" make a determination on whether to comply with a request for records within 20 days (excluding Saturdays, Sundays, and legal public holidays) of receipt of that request, and "shall immediately" notify the individual making the request. If the agency fails to comply with this time limit, the person making the request "shall be deemed to have exhausted his administrative remedies." *See* 5 U.S.C. § 552(a)(6)(C). Thus, if an agency fails to respond in a timely manner, a

requestor is deemed to have constructively exhausted his or her remedies until the agency does respond. *See, e.g.*, *Dinsio v. F.B.I.*, 445 F. Supp. 2d 305, 309 (W.D.N.Y. 2006) ("[A] plaintiff may be deemed to have constructively exhausted his remedies if the agency fails to make a timely response to the initial request.").

Plaintiff asserts that his claim based on his FOIA Request 1 is constructively exhausted because BOP failed to provide timely responsive documents. However, once an agency does respond to a FOIA request, an administrative appeal is possible, and in that circumstance, a FOIA requestor is required to exhaust his available remedies. *Smith v. United States*, No. 3:21-CV-914 (AWT), 2022 WL 3701636, at *4 (D. Conn. Aug. 26, 2022) ("[C]onstructive exhaustion under 5 U.S.C. § 552(a)(6)(C) allows immediate recourse to the courts to compel the agency's response to a FOIA request. But once the agency responds to the FOIA request, the requester must exhaust his administrative remedies before seeking judicial review." (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 63 (D.C. Cir. 1990))).

Here, Plaintiff's original FOIA claim challenging BOP's failure to produce responsive documents to Request 1 was constructively exhausted at the time he filed this action. This claim, however, is now moot because BOP conducted a first-level review, produced records, and thereafter corrected many redactions to the production for Request 1. *See* White Decl. ¶¶ 12–13; Def.'s Ex. 6 (revised redacted production), ECF No. 19-9.

Plaintiff now challenges the BOP record production on the basis of the BOP's allegedly intentional omission of records from that production and improper redaction. FOIA does not address whether a plaintiff must exhaust a challenge to an agency's production where the production was provided to the plaintiff after the lawsuit was filed for an already exhausted FOIA claim. *See Miller v. Fed. Elections Comm'n*, No. 1:12-CV-242, 2013 WL 4243044, at *5 (S.D.

Ohio Aug. 15, 2013). Some district courts considering similar circumstances have ruled that a FOIA challenge to the agency's decision to redact or withhold certain documents brought during the pendency of the federal action requires exhaustion prior to federal court review so as to afford the agency an opportunity to use its expertise and correct any error prior to a review by the court. *See Texas Roadhouse, Inc. v. E.E.O.C.*, No. 3:14-CV-652-JHM, 2015 WL 925894, at *4–5 (W.D. Ky. Mar. 3, 2015); *Miller*, 2013 WL 4243044, at *5; *Muset v. Ishimaru*, 783 F. Supp. 2d 360, 372 (E.D.N.Y. 2011).

But the Court may retain jurisdiction where a defendant agency discloses records with redactions or withholdings. *Int'l Refugee Assistance Project, Inc. v. U.S. Citizenship & Immigr. Servs.*, 551 F. Supp. 3d 136, 159 (S.D.N.Y. 2021); *see Baker v. U.S. Dep't of Homeland Sec.*, No. 3:11-CV-588, 2012 WL 245963, at *4 (M.D. Pa. Jan. 25, 2012) (retaining jurisdiction to determine legitimacy of claimed FOIA exemptions); *Nw. Univ. v. U.S. Dep't of Agric.*, 403 F. Supp. 2d 83, 85–86 (D.D.C. 2005) (noting that when an agency produces records in response to a FOIA request after the filing of a lawsuit, "a plaintiff may still have a cognizable interest in having the court determine whether the search for records was adequate"). Indeed, the Third Circuit determined that it was error for a district court to decline to exercise jurisdiction where—like the instant claim—a plaintiff's "lawsuit was underway when the adequacy of the [agency's] disclosure became ripe for disposition." *Biear v. Att'y Gen. U.S.*, 905 F.3d 151, 158 (3d Cir. 2018). Accordingly, the Court will conduct an *in camera* review of the sealed, unredacted copy of the production for Request 1 to determine whether the BOP's redactions under the section 552(b) exemptions are substantiated.[9] *See* Def.'s Ex. 7 (unredacted production under seal), ECF No 20.

---

[9] 5 U.S.C. § 552(a)(4)(B) provides:

> On complaint, the district court of the United States in the district in which the complainant resides . . . has jurisdiction to enjoin the agency from withholding agency

A court may enter summary judgment for an agency in a FOIA case "when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Seife*, 43 F.4th at 238 (quoting *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009)). In determining the adequacy of a FOIA disclosure, the burden of sustaining an agency's determination rests with the agency. 5 U.S.C. § 552(a)(4)(B).

*Privacy Exemptions Under Section 552(b)(6) and Section 552(b)(7)(C)*

Section 552(b)(6) exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." For a section 552(b)(6) exemption, the court must first determine whether the information to be redacted is found in a "personnel, medical, or similar files" (broadly defined as "detailed Government records on an individual which can be identified as applying to that individual"). *Cook v. Nat'l Archives & Recs. Admin.*, 758 F.3d 168, 174 (2d Cir. 2014) (internal quotations omitted). If the information is from an appropriate source, the court must balance the public's interest in obtaining the requested information against the individual's privacy interest to assess whether disclosure would constitute a "clearly unwarranted invasion" as envisioned by the statute. *Assoc. Press v. U.S. Dep't of Def.*, 554 F.3d 274, 291 (2d Cir. 2009).

---

records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action. In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).

Under section 552(b)(7)(C), "records or information compiled for law enforcement purposes" are exempt "to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." In considering whether an exemption under section 552(b)(7)(C) applies, the court must "balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect." *U.S. Dep't of Just. v. Reps. Comm.*, 489 U.S. 749, 776 (1989). Privacy interests include "the individual interest in avoiding disclosure of personal matters" as well as "the interest in independence in making certain kinds of important decisions," and the "interest in keeping personal facts" and "identifying information such as names, addresses, and other personal information" "away from the public eye." *Assoc. Press*, 554 F.3d at 284 (quotations omitted).

Relevant to section 552(b)(6) exemptions, inmates retain a privacy interest in administrative remedy responses that reveal intimate information about medical issues, personal preferences, and an individual's daily life. *Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 3d 441, 450 (D.D.C. 2014). Further, private individuals also have a privacy interest to exempt disclosure of law enforcement records that mention or identify them. *Navigators Ins. Co. v. Dep't of Just.*, 155 F. Supp. 3d 157, 172 (D. Conn. 2016) (noting that the "identification of an individual in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation" and individuals involved in law enforcement investigations have a "substantial interest in seeing that their participation remains secret" (internal quotations omitted)); *see, e.g., Perlman v. U.S. Dep't of Just.*, No. 00 CIV. 5842 (JGK), 2001 WL 910406, at *6 (S.D.N.Y. Aug. 13, 2001) (finding that the release of the names of individuals who provided information during an investigation would subject them to "embarrassment, harassment or threats of reprisal"), *aff'd in relevant part*, 312 F.3d 100, 106 (2d Cir. 2002).

13

Defendant's Exhibit 7, filed under seal at ECF No. 20, substantiates that BOP's redactions at pages 21–24 of Exhibit 6 contain identifying information about other inmates and administrative remedy response narratives that reveal private information about other inmates' medical conditions, disciplinary issues, harassment complaints, and release dates. *See* Def.'s Rule 56(a) ¶ 32. And, the redactions at pages 27, 95, 206, 253, 317, and 318 are for identifying information of individuals in connection with complaints about staff misconduct. *Id.* The Court can discern no public interest that can be served by disclosing this highly personal information about individual inmates. The Supreme Court has clarified that the only relevant public interest is "to open agency action to the light of public scrutiny." *Assoc. Press*, 554 F.3d at 285 (quoting *Reps. Comm.*, 489 U.S. at 772). And, "[w]hether the public interest in disclosure warrants the invasion of personal privacy is determined by the degree to which disclosure would further the core purpose of FOIA, which focuses on 'the citizens' right to be informed about what their government is up to.'" *Id.* at 285 (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 177 (1991)). Here, Defendant BOP has provided sufficient information for the Court to confirm on *in camera* review that disclosure of the redacted, highly private information about other inmates would do little to advance FOIA's purpose to inform citizens about government action. Accordingly, the Court concludes that the redactions under sections 552(b)(6) and (7)(C) are appropriate.

*Exemptions under Section 552(b)(7)(E)–(F)*

Under section 552(b)(7)(E)–(F), "records or information compiled for law enforcement purposes" are exempt "but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or

14

(F) could reasonably be expected to endanger the life or physical safety of any individual." The BOP is considered a law enforcement agency charged with law enforcement purpose of protecting inmates, staff, and the community. *Butler v. Fed. Bureau of Prisons*, No. 05CV643, 2005 WL 3274573 (JDB), at *3 (D.D.C. Sept. 27, 2005). Relevant to Section 552(b)(7)(F), information in law enforcement documents can result in third parties being identified and subject to retaliation. *See Quinto v. U.S. Dep't of Just.*, 711 F. Supp. 2d 1, 8 (D.D.C. 2010). Here, the BOP made two redactions under section 552(b)(7)(E)–(F) at pages 256 and 264, which both contain information about inmate safety requests made through the BOP's administrative remedy program and would thereby expose the inmate to foreseeable danger and disclose BOP law enforcement techniques. Def.'s Rule 56(a) ¶ 32. After *in camera* review of the unredacted material and consideration of the declarations from the Government Information Specialists, the Court concludes that the BOP has sustained its burden of demonstrating that the 552(b)(7)(E)–(F) exemptions justify the redactions at pages 256 and 264.

*Document Omissions*

In response to Plaintiff's claim that the BOP omitted two documents that he had requested, Second Am. Compl. ¶ 25, Defendant submitted specific evidence to explain why there were no responses to provide for Administrative Remedies Numbers 1114758 and 1114693. White Decl. ¶ 10. BOP's Government Information Specialist White avers that no response was provided for Number 1114578 because it was rejected, and no response was provided to Number 1114693 because the BOP only forwarded a copy of the filing that the nonparty inmate had submitted. *Id.* The BOP cannot provide an Administrative Response that does not exist. As Defendant BOP's evidence substantiates that the BOP could not have provided Plaintiff with responses for

Administrative Remedy Numbers 1114758 and 1114693, the motion for summary judgment will be granted in Defendant BOP's favor on Plaintiff's FOIA challenge in Count One.

**Count Two**

In Count Two, Plaintiff asserts that BOP has a policy or practice to withhold records or delay release of information requested under FOIA. Second Am. Compl. at 4–6. In support of this claim, Plaintiff asserts that BOP (1) fails to respond to a FOIA request until a lawsuit is filed, as illustrated by his Request 1; (2) assigns simple FOIA requests to the complex track, although the FOIA request could be easily searched through BOP's SENTRY database as demonstrated by his Request 2 and another request submitted by a nonparty inmate on March 19, 2022 (Request 3) for computerized bed assignment data; and (3) delays substantive determinations in order to extend the response time as shown by Request 2. *Id.* ¶¶ 14, 26.

In *Payne Enterprises, Inc. v. United States*, the District of Columbia Circuit recognized a stand-alone claim—separate from those seeking relief for specific FOIA requests—asserting "that an agency *policy or practice* will impair the party's lawful access to information in the future." 837 F.2d 486, 491 (D.C. Cir. 1988) ("[E]ven though a party may have obtained relief as to a specific request under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future."). The plaintiff in *Payne* challenged the Air Force's "practice of unjustified delay" after repeated FOIA requests for documents even after the Secretary of the Air Force had determined that the agency's position was "wholly unjustified" and ordered the records disclosed "without exception." *Id.* at 487–90. The D.C. Circuit observed that "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses." *Id.* at 494 (quoting *Long v. U.S. I.R.S.*, 693 F.2d 907, 910 (9th Cir. 1982)); *see also Jud. Watch, Inc. v. U.S. Dep't of*

16

*Homeland Sec.*, 895 F.3d 770, 777 (D.C. Cir. 2018) ("FOIA authorizes a court not only to 'order the production of any agency records improperly withheld,' but also to 'enjoin the agency from withholding agency records.' This injunctive authority does not limit the district court's inherent injunctive powers." (internal citation omitted) (quoting 5 U.S.C. § 552(a)(4)(B)).

Defendant first argues that the Second Circuit has not recognized a policy or practice claim as an independent action cognizable under FOIA. Def.'s Mem. at 19, ECF No. 19-1; *see Pietrangelo v. U.S. Army*, 334 F. App'x 358, 360 (2d Cir. 2009) (summary order) (noting that "[o]ther circuits and district courts have . . . concluded that a plaintiff may bring an independent claim alleging a pattern or practice of violating the FOIA," but that the Second Circuit "has not yet recognized or articulated the inquiry relevant to a pattern or practice claim in the FOIA context"). Indeed, the Second Circuit recently affirmed a district court's entry of judgment in an agencies' favor for a FOIA policy or practice claim without affirmatively recognizing the viability of such claim. *Am. Soc'y for the Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv.*, 60 F.4th 16, 21 (2d Cir. 2023) (finding that, "even assuming that a 'policy or practice' claim is cognizable, the ASPCA failed to state such a claim against the agencies," and noting that the "D.C. Circuit in *Payne* contended with an extraordinary set of circumstances not present here").

Even in the absence of Second Circuit guidance, district courts in this Circuit have entertained FOIA policy and practice claims, although none appear to have granted any relief on such claims. *See Am. Soc'y for the Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv.*, No. 19 CIV. 3112 (NRB), 2021 WL 1163627, at *14 (S.D.N.Y. Mar. 25, 2021) (recognizing that FOIA policy and practice claims are justiciable as "nothing in the FOIA . . . prevents a federal court from granting equitable relief to address an agency's 'policy or

17

practice'" that impairs FOIA requests; and noting that other courts in this Circuit have adjudicated policy and practice claims but not afforded relief on such claims (collecting cases)), *aff'd*, 60 F.4th 16. Following this precedent, the Court assumes that a FOIA policy or practice claim is cognizable.

In the absence of controlling Second Circuit law, the Court applies the standards articulated by the D.C. Circuit. *See Am. Soc'y*, 2021 WL 1163627, at *15. Thus, to prevail on his claim, Plaintiff must show that (1) the agency's policy or practice—not a merely an isolated mistake by agency officials—"will impair [Plaintiff's] lawful access to information in the future," and (2) that that Plaintiff "will suffer continuing injury due to this practice." *Payne*, 837 F.2d at 491 (internal quotations omitted). Consistent with *Payne*, the pattern of delay Plaintiff challenges must be "prolonged" and "unreasonable." *Jud. Watch, Inc.*, 895 F.3d at 780–81; *see also Am. Soc'y*, 60 F.4th at 21 (recognizing that "the D.C. Circuit in *Payne* contended with an extraordinary set of circumstances"); *id.* at 25 (Menashi, J., concurring) ("Courts that have recognized 'policy or practice' claims have emphasized that a requester must at least allege 'prolonged, *unexplained* delays in producing non-exempt records.' The unexplained character of the delay allows for the inference that the agency could have 'a policy or practice of ignoring FOIA's requirements.'" (internal citation omitted) (quoting *Jud. Watch*, 895 F.3d at 780)).

Plaintiff complains that the BOP failed to provide information within the requisite twenty-day period. Second Am. Compl. at 2–3. But while FOIA "provides a 'default 20-working-day timeline,'" for the agency to "determine[] '*whether* to comply with [a FOIA] request' and notif[y] 'the person making such request' of that decision. . . . 'the statute expressly contemplates that an agency could take several months to process a FOIA request, and agencies regularly—and lawfully—take that long to determine whether to produce requested records.'" *Am. Soc'y*, 60 F.4th at 24 (Menashi. J., concurring) (quoting *Jud. Watch*, 895 F.3d at 791 (Srinivasan, J., dissenting));

*Jud. Watch*, 895 F.3d at 791–92 (Srinivasan, J., dissenting) (noting that portions of the FOIA permit an agency to extend the time period to make a determination or process a request). Here, Plaintiff alleges that his Request 1 was submitted on April 20, 2022, he received a production (with redactions) approximately four months later August 30, 2022, and these redaction were reviewed and revised on October 26, 2022; that he submitted Request 2 on May 16, 2022, received notice of its receipt on May 26, 2022, and a substantive determination of unusual circumstances was made less than three months later on August 15, 2022; and that the third party inmate submitted his Request 3 on March 19, 2022, received notice of receipt on March 24, 2022, and a substantive determination of unusual circumstances was made less than a month later on April 4, 2022.

Government Information Specialist White avers that there was a large volume of FOIA requests that required processing because the Northeast Region had lacked FOIA processors for approximately three months (since April 2022) prior to the date she commenced her position on July 31, 2022. White Decl. ¶ 16. She states that FOIA staff for BOP's Northeast Region is trying to work though the FOIA requests as quickly as possible. *Id.*

Plaintiff requests discovery for his claim of a policy or practice of abusive delays for inmate FOIA requests. Pl.'s Opp'n at 12. But Plaintiff's claim based on his Requests 1 and 2 and a third request by another nonparty inmate do not substantiate "an extraordinary circumstance" of unreasonable or wholly unjustified delays for FOIA requests as required for his policy or practice FOIA claim. Plaintiff's allegations about the three FOIA requests do not suggest that they were ignored or subjected to a prolonged period of *unjustified* agency non-responsiveness. Plaintiff complains about an isolated period of delay in processing FOIA requests caused by inadequate staffing that is now being rectified. Accordingly, there is no inference that BOP has a systemic

policy or practice to withhold records or delay release of information requested under FOIA, and the motion for summary judgment is GRANTED in Defendant's favor as to this claim.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment, ECF No. 19. The Clerk of the Court is instructed to enter judgment in Defendant's favor and to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 7th day of July 2023.

_/s/ Kari A. Dooley_____
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE